## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE #1 (a fictitious name) and | : |
| JANE DOE #1 (a fictitious name), | : |
| Plaintiffs, | : |
| | : CIVIL ACTION NO. |
| | : |
| v. | : |
| | : JURY TRIAL DEMANDED |
| PENNSYLVNIA DEPARTMENT OF | : |
| HUMAN SERVICES, DELAWARE | : |
| COUNTY JUVENILE DETENTION | : |
| CENTER, CHILD GUIDANCE | : |
| RESOURCE CENTER, JOHN DOES | : |
| 1-100 and ABC ENTITIES 1-10, | : |
| | : |
| Defendants. | : |

## COMPLAINT – CIVIL ACTION

### Introduction

1.     For decades, there has been an epidemic of child abuse and rape occurring in juvenile disciplinary institutions around the country. This abuse has been perpetuated by administrators, counselors, guards, and peers alike. The emotional, physical and sexual abuse and neglect of minors has become engrained in these institutions, as they continuously choose to enable the abuse of children by turning a blind eye for callous economic benefit.[1]

2.     Juvenile disciplinary institutions, established to care for, supervise, protect and rehabilitate children who have committed delinquent acts, have now turned into an open arena for child abuse and neglect. No matter the circumstance, children who enter these facilities should not

---

[1] See Richard A. Mendel, *Maltreatment of Youth in U.C. Juvenile Corrections Facilities*, ANNIE E. CASEY FOUND. 3 (2015), http://www.aecf.org/m/resourcedoc/ aecfmaltreatmentyouthuscorrections-2015.pdf (addressed a study conducted by the Federal Bureau of Justice Statistics which revealed a continuing national epidemic of sexual abuse within State-funded juvenile facilities with about 10% of children within these facilities are sexual assault victims.); *See also* Clifton Adcock, *Most Juvenile Facilities Don't Comply with U.S. Rape Prevention Standards*, OKLA. WATCH (Feb. 25, 2016), http://oklahomawatch. org/2016/02/25/most-juvenile-facilities-dont-comply-with-u-s-rape-prevention-law/.

be subjected to any form of abuse. Despite this, abuses routinely take place. Further, it is well known that reported abuse still only represents only a fraction of the actual abuses that occur as many incidents go unreported, even in cases where the abuse is known and/or suspected to have occurred.[2]

3.    The purpose of juvenile disciplinary institutions is not to punish, but to provide children with the appropriate care, supervision, and rehabilitation. Under Pennsylvania's Juvenile Act, disciplinary facilities such as the Delaware County Juvenile Detention Center (hereinafter "DCJDC") are obligated "[t]o provide for care, protection, safety and wholesome mental physical development of children."[3] Unfortunately, for the boys and girls who were committed to the DCJDC, nothing could have been further from the truth.

4.    For decades at DCJDC, a culture of abuse not only festered, but was perpetrated by staff and perpetuated by those at every level through repeated cover ups. From guards to supervisors to counselors to superiors of every level, various abuses were both known and ignored.

5.    The case is about all of the young boys and girls who were sentenced to a lifetime of pain and anguish by the physical, emotional, and sexual abuse and neglect that they were forced to endure. Plaintiffs are but two of those children. There are countless others.

6.    Under the authority of Director Mark A. Murray (hereinafter "Murray"), children at DCJDC were physically, mentally, and/or sexually abused and neglected by staff and peers. Perhaps worse than the abuse itself was the culture, one not simply of tolerance *of* abuse, but enthusiasm *for* abuse. This culture was enabled and advanced by Murray and his staff, evidenced by their continued failure to report and/or prevent suspected, reasonably knowable, and/or known child abuse and neglect.

---

[2] *Id.*; *See also* Joaquin Sapien, *Report Cities Failure to Act Against Abusers of Juveniles in Detention*, PROPUBLICA (Feb. 3, 2016), https://www.propublica.org/article/report-citesfailure-to-act-against-abusers-of-juveniles-in-detention
[3] 42 Pa.C.S. §6301(b)(1.1)

7.     The matter before this Court is also about Defendants, DCJDC and the Department of Human Services' (hereinafter "DHS") failure to protect the Plaintiffs and other children from severe and pervasive abuse that was rampant for years, perpetrated by staff, and the blatant refusal of their employees to report known and/or suspected child abuse that was being and/or had been committed upon children at DCJDC, of which they knew or should have known, as well as the unconscionable and outrageous conduct of DCJDC and DHS in allowing DCJDC to exist as it did, to retain staff who not only abused and neglected children, but also threatened and intimidated minors to stay silent, after knowing of multiple instances of abuse and intimidation involving multiple staff members in DCJDC, thereby exposing children, including Plaintiffs, again and again to known danger.

8.     This matter is also about the cover up of abuse perpetrated by DCJDC and its staff along with Defendant Child Guidance Resource Center (hereinafter "CGRC") in choosing to protect their own reputation and bottom line at the expense of the safety and well-being of children in need and in their care, custody, and/or control. The full extent of their efforts in fostering a culture of secrecy that allowed such pervasive abuse of children and the effects of same may likely never be fully known.

### *The Parties*

9.     Plaintiff, John Doe #1, is an adult male whose name and address is not contained in this Complaint so as to protect his privacy and identity as he incurred injuries and damages of a sensitive nature as a result of the intentional and negligent acts and failures of Defendants outlined below.  Information which would or could identify John Doe #1 is not contained herein.  Plaintiff may be contacted through his counsel as outlined herein.  John Doe #1 is a citizen of the Commonwealth of Pennsylvania.

10.     Plaintiff, Jane Doe #1, is an adult female whose name and address is not contained in this Complaint so as to protect her privacy and identity as she incurred injuries and damages of a sensitive nature as a result of the intentional and negligent acts and failures of Defendants outlined below.  Information which would or could identify Jane Doe #1 is not contained herein. Plaintiff may be contacted through her counsel as outlined herein. Jane Doe #1 is a citizen of the Commonwealth of Pennsylvania.

11.     Plaintiffs, John Doe #1and Jane Doe #1, have sought leave of Court to proceed anonymously with the filing of their Motion for Leave to Proceed Anonymously and for a Protective Order Pursuant to Federal Rule of Civil Procedure 26(c). That motion was filed concurrently with the filing of this Complaint.

12.     Plaintiffs' claims are properly joined pursuant to Fed. R. Civ. Pro. 20 as they arise out of the same transaction, occurrence, or series of transactions or occurrences and involve common questions of law and/or fact, namely, the history of systematic physical, mental and sexual abuse and neglect at DCJDC as a result of the Defendants' conduct and cover up of same that resulted in the injuries and damages suffered by Plaintiffs.

13.     Defendant, DCJDC is a youth detention center owned, controlled, and operated by the County of Delaware, Pennsylvania. Specifically, DCJDC is an activity of Delaware County, which is a political subdivision of the Commonwealth of Pennsylvania and body politic, and lies within this district.

14.     The DCJDC is a division of the Court Services Department of Delaware County, governed by the Board of Judges, under the direction of President Judge Kevin F. Kelly. DCJDC is located at 370 Middletown Road, Lima, PA, 19037.

15.     Defendant, Department of Human Services (hereinafter "DHS") is the Commonwealth Agency responsible for licensing, supervising and regulating juvenile detention facilities in the state, including DCJDC.

16.     ABC entities 1-10 are current and or former public agencies or private entities who had responsibilities to ensure the safety and protection of children at DCJDC, and, more specifically, to prevent the abuses described more fully herein from occurring.

17.     Defendants DHS, DCJDC and ABC Entities 1-10 violated the clearly established federal Constitutional and statutory rights of Plaintiffs under the Fourth, Eighth and Fourteenth Amendments, committed tortious conduct under state law, subjecting Plaintiffs to harmful and degrading physical, mental and sexual abuse and neglect, including, but not limited to, rape and the use of excessive and unreasonable physical force, mental torture and neglect and by failing to protect them from harm and injuries at the hands of others.

18.     Defendants DCJDC, DHS and ABC Entities 1-10 caused the injuries and harms to Plaintiffs by failing to train, supervise and discipline the staff at DCJDC, including, but not limited to, the John Doe Defendants and, as a result, staff at DCJDC, including the John Doe Defendants, as a matter of practice and custom, engaged in the prohibited conduct on a systematic basis with the expectation that their conduct would not be subject to discipline or sanctions.

19.     Further, in addition to failing to protect Plaintiffs from physical, mental and sexual abuse and neglect by staff, Defendants DHS, DCJDC and ABC Entities failed to protect Plaintiffs from assaults and abuse by fellow residents. In fact, fights and assaults between residents were encouraged by staff at DCJDC.

20.     Defendants DHS, DCJDC and ABC Entities failed to properly protect Plaintiffs and have shown a reckless disregard and deliberate indifference to the widespread violation of Plaintiffs' rights and others, despite knowing, or in the very least,  in reckless disregard, for decades

of the conduct of the John Doe Defendants, including physical, sexual and mental abuse and neglect, and the corresponding lack of protection for Plaintiffs and the children residing at DCJDC.

21.     Defendant, Child Guidance Resource Center (CGRC), is a non-profit organization in Pennsylvania with its headquarters located at 200 Old West Chester Pike, Havertown, Pennsylvania, 19083. At all relevant times hereto, Defendant CGRC provided counseling and other services to children at DCJDC. CGRC and its employees were mandated to report known or suspected child abuse under Pennsylvania law.

22.     On March 12, 2021, DCJDC was ordered closed by President Judge Kevin F. Kelly as a result of reports of extensive child abuse taking place there, including, but not limited to, abuse described herein.

23.     John Does 1-100 are current and former managers, supervisors, administrators, officials, staff, counselors and others who have been employed by or were under the control of the Defendants, who abused or facilitated the abuse of children at DCJDC.

24.     Because of Defendants' conduct, Plaintiffs suffered and will continue to suffer from physical, bodily injuries, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life. Plaintiffs have and will in the future sustain loss of earnings and earning capacity and have, and will, incur expenses for medical and psychological treatment, therapy and counseling. Defendants are liable for same as described more fully below.

25.     At all relevant times hereto, Defendants were acting by and through their duly authorized actual and/or apparent agents, servants and employees, in particular, their staff, officers, guards, medical clinicians, clinical case workers, supervisors and directors acting within the course and scope of their actual and/or apparent agency and/or employment.

26.     Defendants herein are directly and vicariously liable to Plaintiffs for injuries sustained as a result of negligence, gross negligence, outrageous conduct, and reckless misconduct, as described further herein, of persons or entities whose conduct was under their control, or right to control which conduct directly and proximately caused all Plaintiffs' injuries.

### *Jurisdiction and Venue*

27.     This matter is being brought within the statute of limitations pursuant to 42 Pa. C.S.A. § 5533(b) and pursuant to the laws of the Commonwealth of Pennsylvania including Pa. C.S.A. §§ 8522(b)(10) and 8542(b)(10).

28.     With respect to each Plaintiff, the conduct on the part of staff of DCJDC, in part, including, but not limited to John Does 1-100, herein described, for which Defendants are vicariously liable, would constitute an offense, or a solicitation thereto, under 18 Pa. C.S.A. § 3121; 18 Pa. C.S.A. § 3121.1; 18 Pa. C.S.A. § 3123; 18 Pa. C.S.A. § 3124.1; 18 Pa. C.S.A. § 3124.2; and/or 18 Pa. C.S.A. § 3125. The resulting injuries to each Plaintiff was caused by the intentional, willful, wanton and/or negligent actions and/or omissions of the Defendants described herein.

29.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983. At all relevant times, Defendants DHS, DCJDC and ABC Entities 1-10 acted under the color of state law.

30.     This Court also has subject matter jurisdiction pursuant to 18 U.S.C. § 1595, which provides the district courts of the United States jurisdiction over violations of 18 U.S.C. § 1591.

31.     This Court is "an appropriate district court of the United States" in accordance with 18 U.S.C. §1595.

32.     This Court has supplemental jurisdiction over Plaintiffs' state law claims.

33.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action is brought.

### *Facts*

34.     On March 12, 2021, as a result of an investigation comprised of interviews with clients of the Public Defender's Office of Delaware County, as well as current and former DCJDC staff, Chief Public Defender for Delaware County Christopher Welsh, along with First Assistant Public Defender Lee Awbrey, wrote to Teresa D. Miller, Secretary for Defendant, DHS, expressing their "grave concerns about the health, safety and well-being of the children in custody" at DCJDC.[4]

35.     Specifically, Mr. Welsh's investigation revealed "multiple credible allegations of physical, sexual and mental abuse perpetrated by the DCJDC staff against children in their custody, where a disproportionate number of residents are children of color."[5]

36.     The investigation revealed inadequate facilities, substandard medical and mental health care, deficient education services, and "a culture that fosters secrecy at the expense of the safety of children."[6]

37.     The Delaware County Juvenile Detention Center, a division of the Court Services Department of Delaware County, is a juvenile detention facility with an obligation to provide a secure setting for young children from the ages ten (10) through eighteen (18) years of age.[7]

38.     Children between the ages of ten (10) through eighteen (18) years of age are housed at the DCJDC for various reasons that include but are not limited to: children with behavioral

---

[4] *See* March 12, 2021 correspondence from Christopher Welsh and Lee Awbrey of the Office of the Public Defender, County of Delaware to Teresa D. Miller, Secretary of the Department of Human Services, Commonwealth of Pennsylvania, with attachments, attached hereto as Exhibit "A."
[5] *Id.*
[6] *Id.*
[7] https://www.delcopa.gov/courts/pdf/jd/Yearly.pdf

issues, children in trouble with truancy, and children facing delinquency proceedings awaiting adjudication and/or disposition.

39.     Between 2019 and 2020, DCJDC housed a total of 782 children within its facility.[8]

40.     DCJDC promotes secure custody for its child residents.

### *History of Abuse at DCJDC*

### *Physical, Sexual and Psychological Abuse by DCJDC Staff*

41.     Despite DCJDC, DHS and ABC Entities 1-10's  duty to provide a safe and secure setting for the children that reside within the facility, its actions have demonstrated anything but safety and security. DCJDC, DHS and ABC Entities 1-10's conduct has perpetuated the continued abuse of children housed at DCJDC. DCJDC, DHS and ABC Entities 1-10's actions and omissions have displayed blatant disregard for the health and safety of the children they serve, demonstrated by the physical, sexual, and psychological abuse and neglect committed by DCJDC staff over decades.

42.     There are numerous accounts of physical and sexual abuse committed by DCJDC's staff followed by DCJDC turning a blind eye to these confirmed acts. Despite the many incidents that occurred under numerous administrators, DCJDC outrageously and unconscionably allowed the abuse to continue and chose not to alert the public of their findings and/or danger associated with entering DCJDC. Nor did DCJDC take any remedial measures whatsoever to prevent future abuse from occurring, nor did DHS take any appropriate action to curtail the abuses either. These obvious affirmative acts and omissions led to thousands of at-risk, vulnerable minors (many from troubled backgrounds and broken homes in need of supervision and rehabilitation) being sent

---

[8] *Id.*

against their will and by court order to DCJDC away from their families and into the throes of an abusive environment.

43.     The numerous accounts of physical, sexual and psychological abuse children suffered while in DCJDC's care include, but are not limited to:

a.  DCJDC staff anally raped Plaintiff John Doe #1 when he was sixteen (16) years old;

b.  DCJDC staff raped and sexually abused Plaintiff Jane Doe #1 when she was between the ages of sixteen (16) and seventeen (17) DCJDC while also sexually abusing other minor female residents during "private parties" that involved administering illegal drugs and alcohol to the minors to facilitate the sexual abuse;

c.  DCJDC staff slapped a child's head into a metal wire mesh lined window. The force of DCJDC's staff slapping the child caused the reinforced window to crack;

d.  A DCJDC staff member shoved and hit a child resident;

e.  A DCJDC supervisor violently shoved a child into a wall as the other staff watched;

f.  DCJDC guards, unchecked by supervisors, used extreme amounts of force to restrain children;

g.  A DCJDC child resident reported on at least two (2) occasions, being placed in a chokehold by DCJDC staff which almost caused him to lose consciousness;

h.  A non-resident reported fearing for the life of a child as they watched a DCJDC guard throw the child against a wall in a violent chokehold;

i.  Another repulsive incident involved a DCJDC guard grabbing a pregnant child resident by her shoulders and yelling in her face. After the youth fell to the floor, the DCJDC guard proceeded to carelessly "step over her in a menacing posture as

she lay[ed] on the ground" and continued to scream at her. It was later reported that this DCJDC guard's intent was to cause the child to miscarry;

j.   Another child was victim to a DCJDC guard who repeatedly punched her in the face while another DCJDC guard held her down. Other DCJDC staff carelessly watched as the child was being viciously beaten;

k.   Another horrendous incident involved the physical abuse of a child resident who suffered from a severe mental illness attempting to asphyxiate herself by swallowing clothing. After DCJDC staff was able to intervene and remove the clothing, three (3) DCJDC staff members violently forced the child resident's head into a toilet forcing her to drink from it after the child resident asked for water; and

l.   DCJDC staff also refused to follow suicide protocols as they watched idly as a child had clothing wrapped tightly around her neck causing discoloration in her face and veins to protrude from her neck;

44.   DCJDC staff bragged about the brutal beatings they imposed on the children. A DCJDC staff member was observed gloating about punching a child in the face and stated the staff member "fucked her up."

45.   In addition to the heinous physical abuse the children suffered at the hands of DCJDC staff, the children also suffered from incessant and despicable verbal and emotional abuse.

46.   There are several reports of the pervasive verbal abuse and threats the children residents suffered while in DCJDC's care. A DCJDC staff member has been observed getting in the face of a child and telling him "I'll see you on the street. I'll beat you up. I'll take care of it."

47.   While in the presence of DCJDC's former Lead Clinician, a child resident courageously reported to the DCJDC supervisors the threats he received from an overnight DCJDC staff member. The child informed the supervisor that the DCJDC staff member threatened the child

with the statements he was going "fuck you up" and "fuck [his] mom." DCJDC staff have also been heard yelling out "bitch" to the children.

48.     The verbal abuse and threats made by the DCJDC staff were often racist, misogynistic or offensive to LGBTQ residents. The children were forced to hear vulgar language used by DCJDC staff including occasions when staff shouted out "Fuck you, pussy!" and "Suck my dick, bitch!" at the children.

49.     When attacking the children, DCJDC staff attacked the gender, religious, racial, linguistic, and identity status of the children. These incidents include:

   a.   Placing a Muslim child in solitary confinement for wearing a hijab in a color the DCJDC staff did not like;

   b.   DCJDC staff refused to believe that a Spanish-speaking child could not understand English. Instead of trying to assist the child, DCJDC staff addressed the language barrier by yelling at the child in English;

   c.   Another incident of obscene use of language included DCJDC staff yelling at a child calling him the N-word.

50.     Children of the LGBTQ community have also suffered poor treatment by DCJC staff.  DCJDC's staff has degraded, shamed and humiliated the transgender children at the facility.

51.     Whenever transgender children were in the care of DCJDC, staff refused to use preferred pronouns, denied a transgender child to a wig and did not permit a transgender girl to shave her facial hair.

52.     To further perpetuate their disdain for the LGBTQ community, DCJDC staff outed a transgender child, did not continue her hormone treatment, and did not allow her to live on a unit consistent with her gender identity.

53.     DCJDC leaders forbid staff from attending training that taught transgender cultural competency which was offered by the state at no cost.

54.     The verbal abuse did not stop at the four walls of the DCJDC as a former child resident reported receiving inappropriate messages from a male DCJDC staff member after her release.

55.     The children also suffered sexual abuse which DCJDC ignored. A child reported a male DCJDC staff coming onto her in a sexual manner but was too fearful of retaliation to disclose the staff member's name. An employee of CGRC recalled a DCJDC staff member, known as "Big Rob," playing a song by R. Kelly, who currently stands charged with sexually abusing children, while chasing a child repeating "I'm gonna get you!" Despite this incident being reported to the Childline, "Big Rob" remained employed at the DCJDC.

56.     DCJDC was aware of the abusive patterns used in its facility and has done nothing to stop it.

57.     It is also believed and therefore averred that DHS, CGRC and ABC Entities 1-10 either knew or should have known of the pervasive and severe abuse and neglect being committed upon children at DCJDC as described above yet did nothing to prevent it from happening.

### *Excessive, Unjustified, and Prolonged Isolation*

58.     Many of the children that entered the doors of DCJDC have suffered and/or are suffering from diagnosed mental, emotional, and/or developmental disabilities. The children also came with documented histories of trauma and childhood victimization. The use of solitary confinement will only exacerbate these issues while also perpetuating the continued abuse of children within facilities such as DCJDC.[9]

---

[9] *See* Sue Burrell, *Trauma and the Environment of Care in Juvenile Institutions*, THE NATIONAL CHILD TRAUMATIC STRESS NETWORK, (Aug. 2013) at 4, https://www.nctsn.org/sites/default/files/resources/trauma_and_environment_of_care_in_juvenile_institutions.pdf ("[T]he most potentially damaging way youth can be re-traumatized is in the use of … solitary confinement.").

59.     The use of solitary confinement has produced a long line of precedent of being harmful, increasing risk of self-mutilation, and thoughts of suicide. Solitary confinement can aggravate the onset of pre-existing mental illness while also leading to greater mental health problems such as greater anxiety, depression, sleep disturbances, paranoia, aggression and an increased risk of cardiovascular issues.[10]

60.     Recognizing the detrimental effects of the use of solitary confinement, the National Task Force on Children Exposed to Violence, among other nationally recognized organizations, recommends abolishing the use of solitary confinement against children.[11]

61.     While Pennsylvania law does permit the use of seclusion under strict supervision, its use is severely limited by statute.[12]

62.     DCJDC's use of solitary confinement was not permitted under Pennsylvania law as juvenile detention facilities cannot isolate children for days at a time, use isolation as a form of punishment, nor may they use isolation as a threat to control a child's behavior.[13]

63.     The child residents at DCJDC, including Plaintiff John Doe #1, have been subjected to unlawful prolonged isolation spanning days at a time. During these times of prolonged isolation there have also been instances where children were arbitrarily deprived of access to mental health counselors.

64.     One incident involved a child that was forced into solitary confinement for two (2) weeks due to secondary exposure to Covid-19 despite Covid-19 safety precautions not being consistently followed as Delaware County Covid-19 guidelines do not require employees to

---

[10] *See Solitary Confinement of Juvenile Centers*, https://www.apa.org/advocacy/criminal-justice/solitary.pdf
[11] *See* Feierman, Lindell and Eaddy, *Unlocking Youth, Legal Strategies to End Solitary Confinement in Juvenile Facilities*, JUVENILE LAW CENTER (2017) at 13.
https://jlc.org/sites/default/files/publication_pdfs/JLC_Solitary_Report-FINAL_0.pdf
[12] *See* 55 Pa. Code §3800.274(17) (ii)(Under Pennsylvania law, absent an order by a license physician, physician assistant or registered nurse, no child shall be subjected to solitary confinement for more than four (4) hours. There must be a re-examination and new order for every additional four (4) hours.)
[13] *Id.*

quarantine after secondary exposure. On another occasion, a child was left in solitary confinement for several months.

65.    Another instance involved a child suffering from mental illness covering herself in her own excrement while in solitary confinement. The DCJDC ensured that the child remained locked in solitary confinement for three (3) days without water or the ability to shower.

66.    Despite the evidence of its harmful use, DCJDC, under the licensing and supervision of DHS, proceeded with its continued use of solitary confinement.

67.    In fact, Director Murray further encouraged and promoted the use of solitary confinement by his DCJDC staff as a form of punishment against the children.

68.    During a January 7, 2021 hearing, DCJDC Director Murray openly admitted to the use of solitary confinement against the children. Murry testified that the use of solitary confinement was derived from situational events. The "situational" event Murray testified to was in reference to the immediate use of solitary confinement against a child as a form of punishment after the child stated to the guard that she would slap them. The use of solitary confinement against the child was in violation of Pennsylvania regulations.[14]

69.    From this encounter, DCJDC went through great lengths to obtain a court order to extend the child's solitary confinement from an already long four (4) to eight (8) hour confinement to a full forty-eight (48) hours.

70.    It is believed and therefore averred that all Defendants, DCJDC, DHS and CGRC were aware of the improper use of solitary confinement of children at DCJDC and refused to report or stop the improper practice despite it being clear child abuse.

*Unacceptable Medical Care, Mental Health Care, Education and Facilities*

---

[14] *See* 55 Ps. Code § 3800.202; *see also* 55 Pa. Code §§ 3800.212 (c)(3), 3800.274(17)(ii).

71.     The mental health of a child is crucial to the development of their emotions and other behaviors. There are at least 16.5 million children in the United States that suffer from some form of a mental disorder.[15]

72.     Access to appropriate treatment for mental illness can make a great difference in a child's life.[16]

73.     It was and is the duty DCJDC, DHS and ABC Entities 1-10, to provide the necessary mental health care, medical care, adequate education and facilities to the youth that are under its care.

74.     Often, children at DCJDC were denied access to mental health support and/or have difficulty accessing medical care.

75.     Knowing the need to have such access to mental health supporters, DCJDC developed deceptive means to prevent children from having access to counselors.

76.     A DCJDC employee described that "[s]ome DCJDC staff who placed these children on unit restriction deliberately withhold mental health services during the unit restriction period. To access these children and provide necessary treatment, I had to learn which DCJDC staff members were most likely to give me permission."

77.     Children were also arbitrarily denied access to mental health counselors. Oftentimes, the denial of access to mental health counselors was retaliatory.

78.     Additionally, children's healthcare was often ignored and disregarded. A child suffering from discomfort was turned away because the medical staff refused to believe her symptoms. It was subsequently determined that the child was suffering from a sexually transmitted disease. This neglect resulted in a two (2) week delay in providing the child necessary treatment.

---

[15] *Data and Statistics on Children's Mental Health*, (last reviewed June 15, 2020), https://www.cdc.gov/childrensmentalhealth/data.html
[16] *Id.*

79.     DCJDC had no interest in furthering the education of the children evidenced by its poor curriculum. The education provided to children was "one size fits all" in which children would receive only two (2) hours of schooling and worksheets that were not tailored to their education level.

80.     In addition to the poor education, the children suffered from severely poor living conditions.

81.     The facility was in deplorable condition as it was covered in filth and disgust. Parts of the facility were often covered in mouse droppings and infested with bugs. Some rooms were left unclean for weeks or months at a time.

82.     In the midst of a global pandemic, DCJDC failed to adequately sanitize the facility to ensure the safety of the children. Children had to file grievances to be provided hand sanitizer.

83.     Additionally, the facility lacked adequate water access in the residential units. Toilets and showers did not drain properly, there was an occasion where a child was forced to take a cold shower because her unit did not have hot water.

84.     Even more disturbing is that the children lacked access to proper drinking water as there was only one (1) water fountain within the entire facility. The lack of adequate water access was problematic in particular for children whose medication caused dry mouth and other side effects. DCJDC staff ignored CGRS staff's request to provide a simple pitcher of water to the children.

85.     Children at DCJDC suffered through numerous winters without heat, some occasions lasting as long as a week. When CGRC staff questioned DCJDC regarding the heat, DCJDC stated there was nothing that could be done. A Chidline complaint was filed about the freezing temperatures and the heat was restored later that day.[17]

---

[17] Childline is a hotline service in which child abuse is to be reported, https://www.dhs.pa.gov/keepkidssafe/Pages/default.aspx.

86.     There were instances when it was so cold in the DCJDC facility that children reported seeing their breath. During these winter months DCJDC staff were protected with coats, hats and scarves while the children suffered as they were not given any winter clothing.

87.     Under the National Food Program, the child residents are eligible to receive free breakfast and lunch. Despite this eligibility, the food was inadequate as it was often inedible and as a result the children were often left hungry. DCJDC staff also refuse to accommodate children who are vegetarian.[18]

88.     The DCJDC kitchen staff also failed to comply with sanitary guidelines.

### *DCJDC's Culture of Secrecy*

89.     The culture of DCJDC has fostered an environment of secrecy by instilling fear and creating the ever present threat of retaliation by the DCJDC staff if children were to disclose the abuse they suffered.

90.     Children would often beg the Mental Health Clinician to refrain from reporting abuse to authorities as they feared the disclosure would only result in relation from the DCJDC staff and make matters worse for them.

91.     Despite there being video cameras on the premises, DCJDC staff were well aware of the blind spots where there was no camera coverage. It is in these areas where the previously outlined instances of physical abuse largely occurred. It was also in these areas where children were most vulnerable and put in danger.

92.     The deliberate, strategic, and premeditated actions of the DCJDC staff to ensure that their abusive actions would not be recorded on camera truly exemplifies the scope and scale of the abuses occurring within this facility (and other juvenile detention centers alike).

---

[18] *See* https://www.delcopa.gov/courts/juveniledetention.html

93.     In addition to purposely hiding their abusive acts, DCJDC staff have also altered reports to try and corroborate their false accounts when an incident involving force was reported.

94.     To further ensure the secret and abusive culture, children have been deterred from telling the truth by being told no one would believe them.

95.     In the above mentioned incident where a child courageously reported a threat by an overnight DCJDC staff to the DCJDC supervisor, the supervisor responded, "Do you really think a judge is going to believe a bunch of juvenile delinquents over a corrections officer?"

96.     When Childline reports were made, some DCJDC staff asked for a "heads up" before the report is made.

97.     DCJDC staff would retaliate against those who made Childline reports by giving them the silent treatment, denying them access to children for mental health services, and responding with other spiteful behaviors.

98.     DCJDC leadership encouraged the secrecy of the horrid physical, sexual, and psychological abuse the children suffered by coaching certain children on how to interact with investigators. DCJDC leaders would bribe children with candy to skew the investigation to further hide the abuse the children suffered.

99.     Despite the presence of cameras within the facility to capture the abuse the children suffered, these videos were often hidden from investigators and on other instances flat out ignored.

100.    DCJDC was aware of the conduct of staff and other employees to hide the physical abuse the children suffered. DCJDC encouraged the concealment of the abuse the children suffered and has done nothing to end the secrecy culture or protect the children.

### *The Complicity of CGRC and Abuse at DCJDC*

101.     CGRG is a nonprofit organization and the largest provider of children's mental health services in the greater Philadelphia region.[19]

102.     Among its various services, CGRC also employs mental health staff that provide mental health services to juvenile detention centers such as DCJDC.

103.     The CGRC provided services at the DCJDC through its contract with Delaware County.

104.     As clinical professionals, CGRC staff had a duty to report abuse children suffered at the hands of DCJDC and its staff but instead was instructed to turn a blind eye and in fact did so.

105.     The CGRC encouraged the abuse the children suffered by instructing the CGRC staff to give DCJDC staff "a heads up" when filing a Childline complaint which allowed DCJDC staff time to prepare an explanation and fabricate their accounts.

106.     Despite CGRC's alleged support of the closing of DCJDC and the investigation that followed, CGRC did nothing to stop the abuse the children suffered. Instead CGRC's affirmative actions and omission furthered the abuse and DCJDC's attempts to keep it hidden.[20]

107.     Due to pressure by CGRC leadership, CGRC psychiatrists fabricated reports that were used in court to ensure Delaware County Juvenile Probation's desired results. CGRC staff was repeatedly told not to "rock the boat" and were warned against working with the Public Defender's Office regarding the abuse of the children.

108.     CGRC, its leadership, and its staff were more concerned with their own bottom line and reputation instead of the health and safety of the children as CGRC staff was encouraged to

---

[19] *See* https://www.cgrc.org/
[20]*See* Liia Richmond, *Statement Regarding Lima Detention Center*, (Mar. 14, 2021), https://cgrc.org/blog/statement-re-lima-detention-center/

refrain from exposing the abuse that occurred to prevent antagonizing the Delaware County Juvenile Probation as that would cost CRGC its "lucrative contract" with the Delaware County.

109.    CGRC was aware of the abuse that occurred and had a duty to report abuse and but chose not to do so in many instances.

### *The Abuse of John Doe #1*

110.    John Doe #1 was a resident at the Delaware County Juvenile Justice Center intermittently from the ages of fourteen (14) to seventeen (17) from the years of approximately 2015 to 2018.

111.    When John Doe #1 was sixteen (16) he was a resident at Delaware County Juvenile Justice Center for approximately one month.

112.    During this one-month stay, John Doe #1 was forcibly sodomized by a male guard at DCJDC in the middle of the night.

113.    The guard snuck into John Doe #1's room, forcibly placed himself on top of John Doe #1, pulled down his pants, and forcibly anally raped him.

114.    The guard threatened John Doe #1 and stated that if he told anyone, he would kill him and his entire family.

115.    John Doe #1 suffered through the attack for 10-15 minutes, fearing for his life and the life of his family.

116.    John Doe #1 did not tell anyone until 2020, almost four years later, because of the fear and trauma instilled in him at the DCJDC. Even after disclosing the rape and abuse to his parents, John Doe #1 was afraid to tell police based on the fear of the repercussions.

117.    John Doe #1 was physically abused throughout all of his stays at DCJDC.

118.    On several occasions, John Doe #1 was placed in a choke hold by DCJDC guards, up until he was almost unconscious.

119.    John Doe #1 was continuously slapped, punched in the head and verbally abused by the guards and staff of DCJDC.

120.    In one instance, John Doe #1 was placed in seclusion for four days and was denied counseling.

121.    When a counselor asked how long John Doe #1 had been in seclusion, the staff of the DCJDC lied and stated he had only been in seclusion for two days. Not coincidentally, John Doe #1 was removed from seclusion that night, as an attempt to cover up what the staff had done.

122.    Throughout all of John Doe #1's stays at DCJDC, he was forced to endure horrific living conditions, including but not limited to, insect and rodent infestations, lack of food, undercooked food, black mold, lack of safe drinking water, and lack of heat.

123.    Throughout all of John Doe #1's stays, the staff of the DCJDC and CGRC were aware of and/or took part in, the physical, mental and/or sexual abuse and neglect of John Doe #1, a minor.

124.    John Doe #1 has been diagnosed with Bipolar Disorder, Post-Traumatic Stress Disorder, Depression, as well as other mental health conditions. His experience at DCJDC exacerbated his already existing mental health conditions and further traumatized him.

125.    DCJDC and CGRC knew of John Doe #1's mental health status and knowingly allowed and/or condoned staff physically, sexually, and mentally abusing him, and further placed him in seclusion for four days, without a court order, against the laws of the state of Pennsylvania.

126.    The sexual, physical and mental abuse of minors taking place at DCJDC was known to Defendants DCJDC and CGRC.

127.    As a direct and proximate result of the physical, mental, and sexual abuse and neglect committed by the staff at DCJDC, John Doe #1 suffered physical and emotional injuries,

as more fully set forth in this Complaint. As a result of the abuse at DCJDC, John Doe #1 was severely mentally, psychologically, and emotionally damaged.

128.   John Doe #1 has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including stomach aches, nausea and explosive crying, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life. The significant emotional and psychological injuries sustained by John Doe #1 dramatically transformed his personality.

129.   Throughout his life since the abuse, John Doe #1 has struggled with symptoms of post-traumatic stress disorder. As a result of these problems John Doe #1 has suffered extreme difficulty in interpersonal relationships, among other problems.

130.   All of the above physical, psychological, and emotional injuries were proximately caused by the negligence, carelessness, recklessness, and other tortious and outrageous acts or omissions of Defendants as set forth in this Complaint.

### *The Abuse of Jane Doe #1*

131.   Jane Doe #1 was a resident of DCJDC approximately six (6) or seven (7) times between ages of fifteen (15) and eighteen (18) years-old, from approximately 2006-2009.

132.   When Jane Doe #1 was sixteen (16) to seventeen (17) years old, a guard by the name of "Logan," along with fellow guards "Dale" and "Tucker" and two other unknown adult male guards, would take Jane Doe #1 to "private parties" they would have in DCJDC.

133.   Jane Doe #1 would be taken to these "private parties" held by male guards along with a fellow minor resident, "Olivia."

134.   During these private parties, Jane Doe #1 and other minor females were given alcohol, Xanax and marijuana by the guards.

135.    During these "private parties," after providing drugs and alcohol to minor females, including Jane Doe #1, the male guards would have sex with the minor females, including Jane Doe #1.

136.    A female guard at DCJDC, Teresa Governs, was aware of the "private parties" being held by her fellow adult male guards, and what was happening during the private parties, but chose not to do anything to prevent the abuse that was happening to the minor females, including Jane Doe #1.

137.    Governs would comment on the guards "messing with those white girls."

138.    On one occasion while in the gym at Lima, "Logan" slapped Jane Doe #1's buttocks in front of Governs, who did nothing about it but comment on it.

139.    Almost a decade after leaving DCJDC, in or around 2019, "Logan" was able to locate the cell phone number for Jane Doe #1.

140.    Logan began constantly calling and texting Jane Doe #1, sending sexually explicit messages, attempting to engage in sexual activity with Jane Doe #1.

141.    Thereafter, a different guard at DCJDC, "Grant" contacted Jane Doe #1's sixteen-year-old daughter on Instagram, saying he wanted to "link up."

142.    Jane Doe #1 immediately reported the matter and was told to call Lima director Mark Murray. Jane Doe #1 did as instructed and only to have Mr. Murray summarily dismiss it. Mr. Murray took no action whatsoever in response to Jane Doe #1's report.

143.    As a direct and proximate result of the physical, mental and sexual abuse and neglect committed by the guards at DCJDC, Jane Doe #1 suffered physical and emotional injuries, as more fully set forth in this Complaint. As a result of the abuse at DCJDC, Jane Doe #1 was severely mentally, psychologically, and emotionally damaged.

144.     Jane Doe #1 has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, including stomach aches, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

### *State Law Claims*

### COUNT I –VICARIOUS LIABILITY
### Plaintiffs v. Defendants DCJDC, DHS and ABC Entities 1-10

145.     Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

146.     DCJDC staff, including, but not limited to, John Does 1-100, engaged in unpermitted, harmful and offensive sexual conduct and contact upon the person of Plaintiffs in violation of Pennsylvania State law. Said conduct was undertaken while the perpetrator was an employee and agent of Defendant DCJDC, while in the course and scope of employment with Defendant DCJDC, and/or was ratified by Defendants DCJDC, DHS and/or ABC Entities 1-10.

147.     Prior to or during the abuse alleged above, Defendants DCJDC, DHS and/or ABC Entities 1-10 knew, had reason to know, or were otherwise on notice of the unlawful physical, mental and sexual abuse and neglect of children committed by DCJDC staff. Defendants failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of unlawful sexual conduct in the future by staff, including, but not limited to, preventing or avoiding placement of staff in functions or environments in which contact with children was an inherent part of those functions or environments. Furthermore, at no time during the periods of time alleged did Defendants DCJDC, DHS and/or ABC Entities 1-10 have in place a system or procedure to supervise and/or monitor employees, volunteers, representatives or agents to ensure they did not molest or abuse minors in the care of the Defendants.

148.     Defendants' knowing acquiescence and silence with respect to the known, or reasonably knowable, activities of its staff constituted a course of conduct through which acts of

sexual perversion and the violation of childhood innocence were condoned, approved, and effectively authorized.

149.    Through its failure to timely reprimand and sanction the acts referenced herein, and for all of the other reasons set forth in this Complaint including, without limitation, its failure to take the steps necessary to prevent the occurrence of such reprehensible acts, Defendants ratified said actions and, accordingly, are vicariously liable for the actions of all staff of DCJDC.

150.    As a result of the above-described conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; have sustained and will continue to sustain loss of earnings and earning capacity; and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

## COUNT II -NEGLIGENCE
### Plaintiffs v. Defendants DCJDC, DHS, JOHN DOES 1-100 and ABC Entities 1-10

151.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

152.    At all relevant times, Defendant DCJDC, DHS, John Does-100 and/or ABC Entities 1-10, owed a duty to maintain a safe and habitable environment for the minors being detained at DCJDC, specifically Plaintiffs.

153.    At all relevant times, Defendants had a duty to protect and safeguard Plaintiffs from hurt, harm and danger while they were under their supervision and detained at DCJDC.

154.    At all relevant times, Defendants had a duty to ensure that DCJDC employees were not sexually abusing its minor residents.

155.   At all relevant times, Defendants had a duty to provide for Plaintiffs' basic human needs, including the safety of his person and his living environment.

156.   At all relevant times, Defendants DCJDC, DHS, John Does-100 and/or ABC Entities 1-10 knew or should have known that their agents, employee, servant and/or staff members were sexually abusing Plaintiffs and/or a risk to sexually abuse Plaintiffs.

157.   Defendants knew, had reason to know, or were otherwise on notice of the unlawful conduct of DCJDC staff and failed to protect the safety of children in their detention center, including Plaintiffs. Defendants failed to take reasonable steps and failed to implement reasonable safeguards to prevent acts of unlawful sexual abuse and to prevent or avoid placement of Plaintiffs in functions or environments in which they would be endangered and abused.

158.   Furthermore, at no time during the periods of time alleged did Defendants have in place a system or procedure to supervise and/or monitor DCJDC staff members to ensure that children, including Plaintiffs, were not abused.

159.   Moreover, as set forth above, the incidents of abuse in DCJDC were neither isolated nor unusual. For years, Defendants failed to reprimand, punish, report, or otherwise sanction DCJDC staff who they knew or had reason to know was a danger to children in the detention center. Defendants' knowing acquiescence and/or reckless disregard and silence with respect to the known, or reasonably knowable, activities of DCJDC staff constituted a course of conduct through which acts of sexual violence, mental torment, and the violation of the sanctity of children were condoned, approved, and effectively authorized.

160.   Through their failure to timely reprimand and sanction the acts referenced above, and for all of the other reasons set forth herein including, without limitation, their failure to take the steps necessary to prevent the occurrence of such reprehensible acts, Defendants ratified said

actions and, accordingly, are vicariously liable for the actions of their entities and individual employees.

161.    At all relevant times, Defendants failed to adequately and properly:

a.  employ processes that screen out and/or prevent the hiring of predators on their staff;

b.  supervise its agents, employees, servants, staff members at DCJDC, and/or detainees including, Plaintiffs, and other individuals that knew or should have known about the staff sexually abusing Plaintiffs;

c.  train its agents, employees, servants, staff members at DCJDC, and/or detainees, and other individuals that knew or should have known about the staff sexually abusing Plaintiffs;

d.  employ policies that screen out and/or prevent the retention of predators on DCJDC staff; and

e.  investigate staff background and/or information it knew or should have known during the course of their employment including that they were a predator sexually abusing minors.

162.    The negligent, reckless, intentional, outrageous, deliberately and recklessly indifferent and unlawful acts and omissions of Defendants as set forth above and herein, consisted of, *inter alia*:

a.  permitting staff to sexually abuse minors;

b.  permitting staff to engage in illegal sexual conduct with minors on DCJDC's premises;

c.  permitting staff to physically abuse Plaintiffs;

d.   permitting and/or allowing an environment in which staff violated or engaged in conduct that would constitute violations of Pennsylvania criminal statutes prohibiting Rape (18 Pa. C.S.A. § 3121), and/or Involuntary Deviate Sexual Intercourse (18 Pa. C.S.A. § 3123), and/or Sexual Assault (18 Pa. C.S.A. § 3124.1), and/or Institutional Sexual Assault (18 Pa. C.S.A. § 3124.2), and/or Aggravated Indecent Assault (18 Pa. C.S.A. § 3125), and/or Indecent Assault (18 Pa. C.S.A. § 3126), and/or Corruption of Minors (18 Pa. C.S.A. § 6301), and/or Endangering the Welfare of a Child (18 Pa. C.S.A. § 4304), constituting negligence per se;

e.   failing to properly and adequately supervise and discipline its employees to prevent the sexual abuse that occurred to Plaintiffs;

f.   failing to adopt, enforce and/or follow adequate policies and procedures for the protection and reasonable supervision of children who were placed at DCJDC, including Plaintiffs, and, in the alternative, failing to implement and comply with such procedures which had been adopted;

g.   failing to implement, enforce and/or follow adequate protective and supervisory measures for the protection of minors placed in DCJDC, including Plaintiffs;

h.   creating an environment that facilitated sexual abuse by staff at DCJDC;

i.   failing to adopt, enforce and/or follow policies and procedures to protect minors against harmful influence and contact by DCJDC guards and staff;

j.   violation of duties imposed by Restatement (Second) of Torts, §§ 302B, 314, 315, 317, 323, 324A, 343, 344 and 371 and Restatement (Second) of Agency § 213 as adopted in Pennsylvania;

k.   failing to warn Plaintiffs of the risk of harm posed by guards and staff after Defendants knew or should have known of such risk;

l.  failing to provide Plaintiffs with any assistance in coping with the injuries sustained;

m.  ratifying the staff and guards' conduct;

n.  failing to warn or otherwise make reasonably safe the property which Defendants possessed, supervised and/or controlled, leading to the harm of Plaintiffs;

o.  failing to adopt/implement and/or enforce policies and procedures for the reporting to law enforcement, Office of Children and Youth, authorities within Delaware county, and/or other authorities of harmful acts to children;

p.  failing to report staff and guards' harmful acts to authorities,

q.  failing to implement adequate and proper policies regarding sexual abuse and/or harassment by DCJDC staff and/or violating its own policies regarding sexual abuse and/or harassment by DCJDC staff;

r.  violating the requirements of Pennsylvania's Child Protective Services Law, 23 § 6311(a) and (b), constituting negligence per se;

s.  ignoring, concealing, or otherwise mitigating the seriousness of the known danger that DCJDC and its staff posed;

t.  failing to prevent the sexual abuse that was committed by Defendants' staff on Plaintiffs;

u.  allowing guards to remain on staff after knowing that they sexually abused minors;

v.  failing to properly supervise and/or discipline DCJDC employees;

w.  failing to adequately and properly train its employees regarding sexual abuse of minors by DCJDC staff and the red flags and/or warning signs of sexual abuse; and

> x. negligently managing, supervising, licensing, regulating and/or operating DCJDC.

163. As a proximate and direct result of Defendants' negligence and/or reckless conduct described herein, Plaintiffs were harmed as a result and have sustained physical and emotional injuries, embarrassment, mental anguish, pain and suffering and loss of enjoyment of life and life's pleasures.

164. Plaintiffs have been and will likely, into the future, be caused to incur medical expenses and have or may likely incur a loss of earning capacity in the future.

165. Defendants knew or should have known about the severe risk of their failure to take any appropriate precautions outlined above and acted with a reckless disregard for such risk for which Plaintiffs are entitled to and hereby seek punitive damages pursuant to the requirements of Pennsylvania law.

166. Defendants' actions and failures as described herein are outrageous and were done recklessly with a conscious disregard of the risk of harm to Plaintiffs, for which Plaintiffs are entitled to and hereby seek punitive damages.

## COUNT III -NEGLIGENCE
### Plaintiffs v. Defendant CRGC, John Does 1-100 and ABC Entities 1-10

167. Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

168. At all relevant times, Defendants CGRC, John Does 1-100 and/or ABC Entities 1-10 owed a duty to ensure that minors were not being sexually abused by staff at DCJDC and a duty to report any known or suspected child abuse.

169. At all relevant times, Defendants CGRC, John Does 1-100 and/or ABC Entities 1-10 owed a duty not to help cover up child abuse at DCJDC.

170.    At all relevant times, Defendants CGRC, John Does 1-100 and/or ABC Entities 1-10 owed a duty to protect and safeguard Plaintiffs from hurt, harm and danger while he was under their supervision at DCJDC.

171.    At all relevant times, Defendants had a duty to ensure that the abuse being committed by DCJDC employees was reported.

172.    At all relevant times, Defendants had a duty to provide for the safety of Plaintiffs when it knew, or should have known, Plaintiffs were in danger.

173.    At all relevant times, Defendants knew or should have known that agents, employees, servants and/or staff members of DCJDC were sexually abusing Plaintiffs and/or other minors at DCJDC  and/or posed a risk to sexually abuse Plaintiffs.

174.    Defendants knew, had reason to know, or were otherwise on notice of the unlawful conduct of DCJDC and its own staff and who failed to protect the safety of children in DCJDC, including Plaintiffs. Defendants failed and further prevented its staff in taking reasonable steps to implement reasonable safeguards to prevent acts of unlawful sexual abuse by the staff at DCJDC. Defendants CGRC, John Does 1-100 and/or ABC Entities 1-10 failed to prevent or avoid placement of Plaintiffs in functions or environments in which they would be endangered and abused.

175.    Defendants' knowing acquiescence and silence with respect to the known, or reasonably knowable, activities of DCJDC staff constituted a course of conduct through which acts of sexual violence, mental torment, and the violation of the sanctity of children were condoned, approved, and effectively authorized.

176.    Defendants CGRC, John Does 1-100 and/or ABC Entities 1-10 allowed, condoned and authorized the abuse of minors by telling its staff members not to report the abuse happening

at DCJDC. Defendant further aided in the cover up of the abuse of minors occurring at the detention center so that it may keep its "lucrative contract" with Delaware County.

177.    Through their failure to timely reprimand and sanction the acts referenced above, and for all of the other reasons set forth herein including, without limitation, their failure to take the steps necessary to prevent the occurrence of such reprehensible acts, Defendants ratified said actions and, accordingly, are vicariously liable for the actions of their entities and individual employees.

178.    At all relevant times, Defendants failed to adequately and properly:

a.    employ processes that require its employees to report, screen out and/or prevent the abuse of children by staff;

b.    supervise their agents, employees, servants, staff members, and/or the agents, employees, servants, staff members, and/or agents under their supervision; and

c.    train their agents, employees, servants and/or staff members.

179.    The negligent, reckless, intentional, outrageous, deliberately and recklessly indifferent and unlawful acts and omissions of Defendants as set forth above and herein, consisted of, *inter alia*:

a.    permitting staff to sexually abuse minors;

b.    permitting staff to engage in illegal sexual conduct with minors at DCJDC;

c.    permitting staff to physically abuse Plaintiffs;

d.    permitting and/or allowing an environment in which staff violated or engaged in conduct that would constitute violations of Pennsylvania criminal statutes prohibiting Rape (18 Pa. C.S.A. § 3121), and/or Involuntary Deviate Sexual Intercourse (18 Pa. C.S.A. § 3123), and/or Sexual Assault (18 Pa. C.S.A. § 3124.1), and/or Institutional Sexual Assault (18 Pa. C.S.A. § 3124.2), and/or Aggravated

Indecent Assault (18 Pa. C.S.A. § 3125), and/or Indecent Assault (18 Pa. C.S.A. § 3126), and/or Corruption of Minors (18 Pa. C.S.A. § 6301), and/or Endangering the Welfare of a Child (18 Pa. C.S.A. § 4304), constituting negligence per se;

e.   failing to properly and adequately supervise and discipline its employees to prevent the sexual abuse that occurred to Plaintiffs;

f.   failing to adopt, enforce and/or follow adequate policies and procedures for the protection and reasonable supervision of children who were under the care and supervision of Defendant, including Plaintiffs, and/or failing to implement and comply with such procedures which had been adopted;

g.   failing to implement, enforce and/or follow adequate protective and supervisory measures for the protection of minors under Defendants' care/treatment at DCJDC;

h.   allowing children to be placed in isolation;

i.   creating an environment that facilitated sexual abuse by DCJDC staff;

j.   failing to adopt, enforce and/or follow policies and procedures to protect minors against harmful influence and contact by DCJDC guards and staff;

k.   ratifying the staff and guards conduct;

l.   failing to adopt/implement and/or enforce policies and procedures for the reporting to law enforcement, Office of Children and Youth, authorities within Defendants' ability, and/or other authorities of harmful acts to children;

m.   failing to report staff and guards harmful acts to authorities;

n.   violating the requirements of Pennsylvania's Child Protective Services Law, 23 § 6311(a) and (b), constituting negligence per se;

o.   ignoring, concealing, or otherwise mitigating the seriousness of the known danger that DCJDC and its staff posed;

p.   failing to prevent the sexual abuse that was committed by DCJDC staff on Plaintiffs;

q.   failing to properly supervise and/or discipline its employees; and

r.   failing to adequately and properly train its employees regarding sexual abuse of minors by DCJDC staff and the red flags and/or warning signs of sexual abuse.

180.   As a proximate and direct result of Defendants' negligence and/or reckless conduct described herein, Plaintiffs were harmed as a result and have sustained physical and emotional injuries, embarrassment, mental anguish, pain and suffering and loss of enjoyment of life and life's pleasures.

181.   Plaintiffs, John Doe #1 and Jane Doe #1, have been and will likely, into the future, be caused to incur medical expenses and have been and may likely incur a loss of earning capacity in the future.

182.   Defendant CGRC, a youth counseling service, John Does 1-100 and/or ABC Entities 1-10, knew or should have known about the severe risk of their failure to take any appropriate precautions outlined above and acted with a reckless disregard for such risk, for which Plaintiffs are entitled to and hereby seek punitive damages pursuant to the requirements of Pennsylvania law.

183.   Defendants' actions and failures as described herein are outrageous and were done recklessly with a conscious disregard of the risk of harm to Plaintiffs for which Plaintiffs are entitled to and hereby seeks punitive damages.

### COUNT IV – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### Plaintiffs v. All Defendants

184.   Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

185.    Defendants, by and through their contact with Plaintiffs, as described above, negligently and/or recklessly committed multiple acts of extreme and outrageous conduct which caused severe emotional, psychological, and psychiatric injuries, distress, and harm to Plaintiffs, which also manifested in physical injuries to Plaintiffs as set forth above in an extreme, outrageous and harmful manner.

## COUNT V –INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Plaintiffs v. All Defendants

186.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

187.    Defendants, by and through their contact with Plaintiffs, as described above intentionally committed multiple acts of extreme and outrageous conduct which caused severe emotional, psychological, and psychiatric injuries, distress, and harm to Plaintiffs, which also manifested in physical injuries to Plaintiffs as set forth above, in an extreme, outrageous and harmful manner.

## COUNT VI -NEGLIGENT FAILURE TO RESCUE
### Plaintiffs v. All Defendants

188.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

189.    The negligence and recklessness of Defendants in directly and proximately causing the injuries and damages to Plaintiffs, described herein, includes:

    a.   failing to take reasonable and necessary steps to rescue Plaintiffs after placing them in a position of harm;

    b.   failing to exercise reasonable and necessary steps to prevent further harm after rendering Plaintiffs in danger of further harm;

    c.   failing to take reasonable and necessary steps to give aid or assistance to Plaintiffs after rendering them in danger of further harm;

    d.   failing to take reasonable steps to obtain aid or assistance for the Plaintiffs after rendering them in danger of further harm;

    e.   failing to take reasonable and necessary steps to prevent the delay in the appropriate care of Plaintiffs; and

    f.   violation of the duties set forth in Restatement (Second) of Torts, Sections 314A & 322, as adopted in Pennsylvania.

190.    As a proximate and direct result of Defendants' breaches described in the preceding paragraph, Plaintiffs sustained psychological and physical harms and injuries as described above.

191.    The aforementioned incidents resulted from the negligence, recklessness and/or intentional acts of Defendants and was due in no manner whatsoever to any act or failure to act on part of Plaintiffs.

## COUNT VII - FAILURE TO WARN

### Plaintiffs v. Defendants DCJDC, DHS, John Does 1-100 and ABC Entities 1-10

192.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

193.    At all times material hereto, Defendants owed a duty to Plaintiffs and the public to warn about DCJDC and its staff when they knew, or should have known, that the staff and facility posed a risk to all persons and in particular to minors being detained in their juvenile detention center.

194.    Defendants breached their duty to warn that DCJDC staff members, specifically the guards, posed a risk of harm. Defendants failed to exercise the reasonable care, skill, and diligence

of an ordinarily prudent county would, in warning minors and the public of the risks posed by their staff.

195.    No negligence on the part of the Plaintiffs contributed to the happening of the occurrence.

196.    Plaintiffs' injuries and damages as recited herein, occurred directly and were proximately caused by Defendants' breach of duty to warn as described herein.

197.    As a direct and proximate result of Defendants' failure to warn the public and Plaintiffs about DCJDC and its staff, Plaintiffs suffered serious injury, have required medical care and attention; have suffered mental anguish, severe pain and agony as a result of the happening of the occurrence; and were otherwise injured and damaged, for which claim is made.

## COUNT VIII - CIVIL CONSPIRACY
### Plaintiffs v. Defendants DCJDC, CRGC, John Does 1-100 and ABC Entities 1-10

198.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

199.    As outlined above and upon information and belief, Defendants (which is comprised of a network of the above outlined facilities and/or entities) and its employees/agents/staff/administrators/directors knowingly and willfully conspired and agreed among themselves to misrepresent to and conceal from the public, including, but not limited to Plaintiffs and their families, incidents and allegations of abuse and exploitation and/or that there was a danger to all of the residents at DCJDC being abused and/or exploited. This conspiracy continued until March of 2021 when DCJDC was finally shut down.

200.    The network of entities herein conspired to keep incidents and allegations of abuse and exploitation from the public, including but not limited to Plaintiffs, as well as appropriate licensing and law enforcement authorities. Instead of informing the public, Plaintiffs, and/or appropriate licensing and law enforcement authorities about instances of abuse and exploitation,

Defendants intentionally and falsely told Plaintiffs, the public and appropriate licensing and law enforcement authorities that the children in the care of DCJDC were safe, protected and having their basic human needs met.

201.    In furtherance of said conspiracy and agreement, Defendants engaged in fraudulent representations, omissions and concealment of facts, acts of cover-up and statements. Defendants were purely motivated in this regard for the purposes of protecting their own reputations, profit and pockets at the expense of innocent children.

202.    All of the actions of Defendants set forth in the preceding paragraphs were in violation of the rights of Plaintiffs and committed in furtherance of the aforementioned conspiracies and agreements. Moreover, each of the aforementioned individuals lent aid and encouragement, and knowingly financed, ratified and/or adopted the acts of the other. As a proximate result of the wrongful acts herein alleged, Plaintiffs have suffered significant damage as outlined above.

203.    These acts constituted malicious conduct which was carried on by the network herein referred to as Defendants with willful and conscious disregard for Plaintiffs' rights with the intention of willfully concealing incidents of assault, abuse, and exploitation and was despicable conduct by any measure that subjected Plaintiffs to cruel and unjust hardship, so as to justify an award of exemplary and punitive damages. Accordingly, punitive damages should be awarded against Defendants to punish them and deter other such persons from committing such wrongful and malicious acts in the future.

## COUNT IX - NEGLIGENCE *PER SE*
### Plaintiffs v. All Defendants

204.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

205.    Defendants knew, had knowledge or had reasonable suspicion of harmful acts being committed by its staff on minors at DCJDC and negligently, recklessly and/or intentionally violated their statutory duty to report such abuse as required by Pennsylvania's Child Protective Services Law (PCPSL), 23 § 6311(a) and (b) et seq.

206.    Defendants knew, had knowledge or had reasonable suspicion of harmful acts and/or other misconduct being committed by guards on children and/or other minors and negligently, recklessly and/or intentionally violated their statutory duty to report such abuse.

207.    Defendants' violations constitute negligence per se under Pennsylvania law.

208.    Defendants' negligent, reckless and/or intentional failure to report such harmful acts allowed DCJDC staff to sexually abuse Plaintiffs, causing continuing harm to Plaintiffs and the injuries and damages described above.

209.    Such failure on the part of Defendants was reckless, intentional, knowing, grossly negligent, deliberately and recklessly indifferent, outrageous, malicious and/or was a reckless and conscious disregard for the safety of Plaintiffs.

### *Federal Claims*

### <u>COUNT X - 42 U.S.C. § 1983</u>

### <u>Plaintiffs v. DCJDC, DHS, John Does 1-100 and ABC Entities 1-10</u>
**Violations of 42 U.S.C. § 1983 and the Fourth, Eighth and Fourteenth Amendments**

210.    Plaintiffs incorporate by reference each allegation stated above.

211.    The Fourth, Eighth and Fourteenth Amendments to the United States Constitution protect Plaintiffs from physical abuse and unreasonable or excessive force from DCJDC staff. These amendments also required Defendants to establish policies and practices to protect Plaintiffs from known harms and known patterns of constitutional deprivations.

212.    Defendants failed, with deliberate indifference, to provide a safe custodial setting for Plaintiffs, by failing to properly train, supervise and discipline staff at the school, including the

John Doe Defendants. As a proximate result of Defendants' policies, practices and customs, the staff at DCJDC, including the John Doe Defendants, subjected Plaintiffs to excessive and unreasonable force, a failure to protect from harm, and other abuses alleged in this Complaint. Defendant DCJDC and staff violated Plaintiffs' Eighth and Fourteenth Amendment rights when they physically, verbally, and sexually abused Plaintiffs.

213. The force used in each of these instances was objectively unreasonable, malicious, sadistic, intended to cause harm, and without any legitimate penological purpose.

214. The aforementioned affirmative acts outlined in this Complaint on the part of Defendants constituted a state created danger which directly and proximately caused harm to Plaintiffs.

215. Defendants served an exclusively public function and acted or failed to act under the color of state law.

216. Defendants' acts and omissions shocks the conscience, deprived Plaintiffs of their Eighth and Fourteenth Amendment rights to be protected from physical, mental and sexual abuse and neglect and unreasonable or excessive force, and caused Plaintiffs grave physical, emotional, psychological and other harm.

217. Defendants are liable to Plaintiffs under the Class under 42 U.S.C. § 1983 and the Fourth, Eighth and Fourteenth Amendments.

**COUNT XI - CONDUCT IN VIOLATION OF THE TRAFFICKING VICTIM
PROTECTION REAUTHORIZATION ACT, 18 U.S.C. § 1591(a)
Plaintiff Jane Doe #1 v. Defendants John Does 1-100**

218. Plaintiffs incorporates each forgoing allegation herein.

219. Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102, as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person

for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion."

220.    Pursuant to 18 U.S.C. §1591(a), all who knowingly provide or obtain commercial sex that was provided or obtained through force, fraud, and coercion are guilty of sex trafficking. This includes, at a minimum, *both* the 'traffickers' who recruit, harbor, transport, and provide individuals for forced commercial sex work *and* those who obtain, solicit, or patronize forced commercial sex work.

221.    Pursuant to 18 U.S.C. §1591(a), anyone under the age of 18 engaging in the act of commercial sex is considered to be a victim of human trafficking.

222.    John Does 1-100 gave Jane Doe #1 and other minor females at DCJDC drugs and alcohol in exchange for sex.

223.    John Does 1-100, through force, fraud and/or coercion engaged in a commercial sex act with Jane Doe #1 and other minor females at DCJDC.

224.    Jane Doe #1 is a victim of sex trafficking with the meaning of 18 U.S.C. §1591(a) and is therefore entitled to bring a civil action under 18 U.S.C. §1595.

225.    The actions, omissions, and/or commissions alleged in this pleading were the but-for and proximate cause of Plaintiff's injuries and damages.

226.    Plaintiff Jane Doe #1 has suffered substantial physical and psychological injuries as a result of being trafficked and sexually exploited by Defendants John Does 1-100 in violation of 18 U.S.C. §1591(a).

### COUNT XII - BENEFITING FROM A SEX TRAFFICKING VENTURE IN VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT, 18 U.S.C. §§ 1591 AND 1595
### Plaintiff Jane Doe #1 v. All Defendants

227.    Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs

as if fully incorporated herein.

228.    Under 18 U.S.C. §1591, liability arises for entities who: (1) knowingly benefitted financially or by receiving anything of value (2) from participation in a venture (3) it knew or should have known was engaged in sex trafficking.

229.    Pursuant to 18 U.S.C. §1591(a), anyone under the age of 18 engaging in the act of commercial sex is considered to be a victim of human trafficking.

230.    Defendants' acts, outlined above, constitute a violation of 18 U.S.C. §1595. Specifically, Defendants had a statutory obligation not to participate in or benefit from a venture that they knew, or should have known, was engaged in violations of 18 U.S.C. §1591(a). At all relevant times, Defendants breached this duty by participating in, and facilitating, the harboring and provision of Plaintiff Jane Doe #1 for the purpose of commercial sex induced by fraud and coercion by their acts, omissions, and commissions.

231.    Defendants knew, or were in reckless disregard of the fact, that it was John Does 1-100's pattern and practice to use alcohol and drugs to solicit and engage in coerced sexual activity with minor females, including, but not limited to, Jane Doe #1, at DCJDC.

232.    Defendants knowingly benefited from, and received value for, their participation in the venture with John Does 1-100, with the Defendants knowledge, or in reckless disregard of the fact, that John Does 1-100 would utilize their positions as guards at DCJDC and influence, to solicit and coerce Plaintiff Jane Doe #1 and other minor females, who were under the age of eighteen (18), to engage in commercial sex acts.

233.    Defendants have financially benefitted as a result of these acts, omissions, and/or commissions by their participation in owning, operating, managing, supervising, licensing and/or contracting with DCJDC.

234.    Plaintiff Jane Doe #1 is a victim of sex trafficking with the meaning of 18 U.S.C. §1591(a) and is therefore entitled to bring a civil action under 18 U.S.C. §1595.

235.    Defendants knowingly benefited from participation in what they knew or should have known was a sex trafficking venture, in violation of 18 U.S.C. §§ 1591(a)(2) and 1595(a).

236.    Defendants knowingly benefited from, and/or received something of value for their participation in the venture, in which Defendants knew, should have known, or were in reckless disregard of the fact that the Plaintiff Jane Doe #1 and other minor females were engaged in commercial sexual acts while under the age of eighteen.

237.    Defendants' employees and agents had actual knowledge or should have known that they were facilitating and participating in a scheme to profit from the commercial sex acts of minor children.

238.    Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. §1595.  Specifically, Defendants had a statutory obligation not to benefit in any way from a venture they knew, or should have known, to engage in violations of 18 U.S.C. §1591(a).  At all relevant times, Defendants breached this duty by causing a person under the age of 18 to engage in a commercial sex act.

239.    Defendants' conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, financial, and reputational harm.

## PRAYER FOR RELIEF

**WHEREFORE,** in consideration of the above claims, Plaintiffs John Doe #1 and Jane Doe #1, request that a jury be selected to hear this case and render a verdict for the Plaintiffs, and against the Defendants, and that the jury selected award damages to the Plaintiffs in an amount which will effectively prevent other similarly caused acts and adequately reflects the enormity of

the Defendants' wrong and injuries to the Plaintiffs due to the Defendants' faulty conduct, including but not limited to:

        a.      All available compensatory damages for the described losses with respect to each cause of action;

        b.      Past and future medical expenses, as well as the costs associated with past and future life care;

        c.      Past and future lost wages and loss of earning capacity;

        d.      Past and future emotional distress;

        e.      Consequential and/or special damages;

        f.      All available non-economic damages, including without limitation pain, suffering, and loss of enjoyment of life;

        g.      Punitive damages with respect to each cause of action;

        h.      Reasonable and recoverable attorney's fees;

        i.      Costs of this action; and

        j.      Pre-judgement and all other interest recoverable.

Further, Plaintiffs request that the Court enter judgment consistent with the jury's verdict, and prays for any other damages and equitable relief the Court or jury deems appropriate under the circumstances.

                        /s/ Brian D. Kent
                        Brian D. Kent, #94221
                        Gaetano D'Andrea #208905
                        Jillian P. Roth #325987
                        M. Stewart Ryan #313516
                        Alexandria MacMaster #316826
                        LAFFEY, BUCCI & KENT, LLP
                        1100 Ludlow Street, Suite 300
                        Philadelphia, PA 19107
                        (T): (215) 399-9255
                        (E): bkent@lbk-law.com
                            gdandrea@lbk-law.com

jroth@lbk-law.com
sryan@lbk-law.com
amacmaster@lbk-law.com


/s/ Daniel McGarrigle
Daniel McGarrigle, #91587
THE MCGARRIGLE LAW FIRM
117-119 North Olive Street
Media, PA 19063
(T): 610 566-3010
(E): daniel@mcgarriglelawfirm.com

Attorneys for Plaintiffs


Date: March 24, 2021